IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PATRICIA ANN CARPENTER,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

No. C 09-01409 JSW

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Now before the Court is the motion for summary judgment filed by Plaintiff Patricia Ann Carpenter ("Carpenter") and the cross-motion for summary judgment filed by Defendant Commissioner of Social Security, Michael J. Astrue ("Commissioner"). Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument. Having carefully reviewed the administrative record and having considered the parties' papers and the relevant legal authority, the Court hereby DENIES Carpenter's motion for summary judgment and GRANTS Commissioner's cross-motion for summary judgment.

**BACKGROUND**

Carpenter brings this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the Commissioner's final decision denying her request for Social Security Disability Insurance Benefits. Carpenter moves the Court to reverse the decision of the Commissioner and find her disabled under the Social Security Act ("Act") or, alternatively, to remand the matter for further proceedings.

1    Carpenter is 63 years old, approximately five feet and three inches tall, and weighs
2 approximately 260 pounds. (Administrative Record ("AR") at 57, 63.) She graduated high
3 school and completed medical administrative assistant classes. (*Id*. at 71, 266.) Her past
4 relevant work experience consists of working as a medical secretary, receptionist and assistant,
5 nurse aide, and courtesy clerk.[1] (*Id*. at 65, 76, 291.) Carpenter has not engaged in substantial
6 gainful activity from April 20, 2003 through her date last insured of December 31, 2006. (*Id*. at
7 16, 266.) Carpenter claims several disabling conditions, including knee injury to both legs,
8 post-traumatic stress disorder, asthma, numbness in her fingers, arthritis, left shoulder surgery,
9 right hand and right elbow limitations, back pain, allergies and weight gain. (*Id*. at 64.)
10 Carpenter alleges that these conditions limit her ability to work by causing difficulty with
11 lifting, carrying, driving, sitting and walking twenty feet before needing to rest. (*Id.* at 64, 103,
12 104.)

13    In November 2005, Carpenter filed for Title II Disability Insurance Benefits, alleging
14 disability since April 20, 2003. (*Id*. at 57.) In April 2006, the Commissioner decided that
15 Carpenter's medical records were insufficient for a determination and scheduled physical and
16 psychological consultative examinations to assess Carpenter's limitations. (*Id*. at 190.)
17 Carpenter did not keep the appointments, and instead stated that the necessary information was
18 already available in her medical records. (*Id.*) Disability Determination Services ("DDS")
19 contacted Carpenter to reschedule the appointments, informing her that without these
20 examinations her claim would likely be denied on the basis of insufficient evidence. (*Id.*)
21 Carpenter did not reschedule. (*Id*. at 18, 189.) Instead, on August 29, 2006, she saw her own

---

[1] There are inconsistencies throughout Carpenter's paperwork regarding her job titles as "medical receptionist" and "medical secretary." For example, her Disability Report indicates that she was an "operations support laborer" in a medical office from May 1988-August 1995 and an "office clerk" in a medical office from November 1995-January 1996. (AR at 65.) However, her Work History Report indicates she was an "operations support medical assistant" from May 1988-August 1995, a "medical secretary" from November 1995-January 1996," and a "medical secretary" again from October 1996-July 1997. (*Id*. at 76.) That same form later describes her 1995-1996 medical secretary job as "medical receptionist." (*Id*. at 78.) A discussion at the administrative hearing determined that the proper title for this position is "medical receptionist" (AR at 290) and, for the sake of clarity, will herein be referred to as such, and the 1996-1997 position will be referred to as "medical secretary."

2

1 orthopedic consultant, Dr. Andrew Burt, apparently on referral by her representative, Dan
2 McCaskell, PhD. (*Id*. at 18, 20, 196.)

3     Dr. Burt diagnosed Carpenter with the following conditions: chronic
4 musculoligamentous neck pain; post-operative status left shoulder arthroscopy and arthrotomy
5 with residual; chronic musculoligamentous back pain; morbid obesity; post-traumatic
6 trochanteric bursitis of her right hip; and post-traumatic chondromalacia of both knees. (*Id.* at
7 204.) The objective findings included increased cervical lordosis with surgical scarring about
8 the left shoulder; weakness of deltoid; morbid obesity; limited range of motion of lumbar spine;
9 valgus deformity of both knees with medial tenderness; and pronated feet. (*Id.* at 205.) Dr.
10 Burt stated that Carpenter was restricted to weight bearing half-time and could work half-time
11 sitting and half-time standing, based on her subjective complaints. (*Id.*) The doctor
12 recommended that she avoid any work at or above shoulder level and that she avoid heavy
13 lifting, prolonged weight bearing, climbing, walking on uneven terrain, squatting, kneeling,
14 crouching, crawling, and pivoting. (*Id.*) He also stated that it appeared that Carpenter had been
15 rendered unable to work as of April 20, 2003 due to multiple orthopedic symptoms and morbid
16 obesity. (*Id.* at 206.)

17     The Social Security Administration denied Carpenter's initial and reconsideration
18 applications based on her failure to attend the physical and psychological consultative
19 examinations. (*Id.* at 50-54.) Her claim was also decided based on reports by Gary Stein, MD;
20 James Robbins, MD; Ukiah Valley Medical Center; and VA/San Francisco/Ft. Miley. (*Id.* at
21 50.) Carpenter was insured for Title II Disability Insurance Benefits through December 31,
22 2006 when she filed her application in 2005. (*Id.* at 268.)

23     Carpenter requested a hearing with an administrative law judge ("ALJ") after her
24 applications were denied. (*Id.* at 38.) She appeared with Dr. Dan McCaskell, a non-attorney
25 representative, at a hearing before the ALJ on May 14, 2008. (*Id.* at 14, 262, 264.) Malcolm
26 Brodzinsky, a vocational expert ("VE"), was also present at the hearing. (*Id.* at 264.) Mr.
27 Brodzinsky testified that it would take a person three to six months to learn the necessary skills
28 for Carpenter's past job as a medical receptionist and that Carpenter worked a sufficient number

3

1   of months to learn these skills as she had held the position from November 1995 to January
2   1996.  (*Id.* at 294.)
3         Carpenter also worked as a medical secretary from October 1996 through July 1997.
4   (*Id*. at 76.)  The VE testified that this position required sedentary physical demands.  (*Id.* at
5   284.)  Carpenter reported that she performed this job at the "light" level.  (*Id.*)  The VE also
6   testified that Carpenter was a medical assistant from 1988 through 1995; this position was
7   performed at the "medium" level, which required light physical demands.  (*Id*. at 284-85.)
8         The ALJ determined that Carpenter had the residual functional capacity ("RFC") to
9   perform a limited amount of sedentary or light work and that her RFC did not preclude her from
10  performing her past work as a medical secretary and medical receptionist.  (*Id*. at 19-20.)  On
11  this basis, the ALJ concluded that Carpenter was not disabled.  (*Id.* at 21.)  Carpenter
12  subsequently filed a petition for appeal, which was denied on December 8, 2008.  (*Id.* at 4-7.)
13  On September 11, 2009, having exhausted her administrative remedies, Carpenter filed this
14  action for judicial review of the final decision of the ALJ denying her request for Social
15  Security Disability benefits.
16        The Court shall discuss additional facts as necessary in the analysis.

## ANALYSIS

18        Carpenter argues that: (1) the ALJ's findings on RFC are not supported by
19  substantial evidence and were improperly reached; (2) the ALJ improperly discounted her and
20  her husband's statements about symptoms and limitations; and, (3) the ALJ improperly
21  determined that she could perform her past work as a medical receptionist or medical secretary.
22  (Mot. at 3-4.)  The Commissioner argues that: (1) the ALJ could have affirmed his finding that
23  Carpenter is not disabled solely based on Carpenter's refusal to appear for her examinations; (2)
24  the ALJ properly assessed Carpenter's RFC and evaluated her subjective complaints; (3) the
25  ALJ was not required to discuss the written statements by Carpenter's husband; and, (4) there
26  was substantial evidence to support the determinative finding that Carpenter could perform her
27  past work.  (Opp. Br. at 2, 5-6, 8.)
28

4

**A.    Standard of Review.**

A federal district court may not disturb the Commissioner's final decision unless it is based on legal error or the findings of fact are not supported by substantial evidence. 42 U.S.C. § 405(g); *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). "Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). To determine whether substantial evidence exists, courts must look at the record as a whole, considering both evidence that supports and undermines the ALJ's findings. *Reddick*, 157 F.3d at 720. The ALJ's decision must be upheld, however, if the evidence is susceptible to more than one reasonable interpretation. *Id.* at 720-21.

**B.    Legal Standard for Establishing a Prima Facie Case for Disability.**

The claimant has the burden of establishing a prima facie case for disability. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984). The ALJ follows a five-step process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. § 404.1520(c). Third, if the claimant's impairment meets or equals one of the impairments listed in Appendix 1 to the regulation (a list of impairments presumed severe enough to preclude work), the claimant will be found disabled without consideration of age, education, or work experience. 20 C.F.R. § 404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner will assess and make a finding about the claimant's RFC based on all relevant medical and other evidence in the claimant's case record. If the claimant can still perform her past work, she will not be found disabled. 20 C.F.R. § 404.1520(f). Finally, if the claimant's impairments prevents her from making an adjustment to any other work in the national economy, she will be found disabled. 20 C.F.R. § 404.1520(g). If the ALJ finds that the claimant is not disabled at any step along the way, the claimant is not disabled and there is no need to continue subsequent steps of the analysis. 20 C.F.R. § 404.1520. The claimant has the burden of proof at steps one through

5

four; the burden shifts to the ALJ at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

Here, the ALJ determined that Carpenter was not disabled because (1) her impairments did not meet or equal one of the listed impairments in Appendix 1 to the regulation; and (2) her impairments did not prevent the performance of her past relevant work as a medical secretary and medical receptionist. (AR at 19-20.) The ALJ found that Carpenter is able to perform her past work as a medical secretary and medical receptionist based on the VE's testimony that a person of Carpenter's age, education, past work and RFC could perform these jobs. (*Id.* at 20.) The ALJ determined that Carpenter was capable of sedentary or light work, except she was limited to stand and/or walk two hours and sit for 6 hours in an 8-hour workday, needed a cane to walk more than 100 feet or to walk on uneven ground, was able occasionally to kneel, bend, crawl or crouch and should avoid climbing any ladders, ropes or scaffolds. (*Id.* at 19.) In doing so, the ALJ considered Carpenter's symptoms and the extent to which they were consistent with the objective medical evidence and opinion evidence in the record. (*Id.*) However, the ALJ gave little weight to Dr. Burt's report, finding it subjective and inconsistent with the evidence in the record. (*Id.* at 20.) Finally, the ALJ determined that Carpenter's subjective complaints were not fully credible. (*Id.*)

**C. Carpenter's Refusal to Attend the Consultative Examinations is an Independent Basis to Deny Benefits.**

The Commissioner argues that the ALJ was permitted to deny Carpenter's claim based solely on her refusal to attend her consultative examinations. (Opp. Br. at 5.) According to the relevant regulations, an individual who refuses to attend a consultative examination may, as a consequence, be found not disabled. 20 C.F.R. §§ 404.1518(a), 416.918(a) ("[i]f you are applying for benefits and do not have a good reason for failing or refusing to take part in a consultative examination or test ... we may find that you are not disabled."); *see also Kreidler v. Barnhart,* 385 F. Supp. 2d 1034, 1037 (C.D. Cal. 2005) (terminating disability benefits under 20 C.F.R. § 404.1518(a) due to plaintiff's failure to attend consultative examinations). The only reason Carpenter gave for missing her consultative examinations was that she believed the relevant information was already in her record. This does not qualify as a good reason to miss

6

her examinations. *See* 20 C.F.R. § 404.1518(b) (examples of reasons). Thus, Carpenter's refusal to attend the consultative examinations is an independent basis to deny her benefits and affirm the ALJ's finding that Carpenter was not entitled to benefits. (AR at 21.)

**D.   Substantial Evidence in the Record Supports the ALJ's Findings on Carpenter's Residual Functional Capacity.**

This Court must resolve whether the ALJ's findings regarding Carpenter's RFC were supported by substantial evidence. *See Reddick*, 157 F.3d at 720. Carpenter contends that the ALJ's findings were confusing, contradictory, not specific, and were reached by the improper rejection of Dr. Burt's opinion evidence. (Mot. at 4-5.) The Commissioner argues that the ALJ's RFC assessment was consistent with the record and accommodated Carpenter's alleged impairments. (Opp. Br. at 5.)

RFC measures the greatest extent of tasks that an individual can perform after considering the effects of the physical and/or mental limitations that affect her ability to work. 20 C.F.R. § 404.1545(a)(1). When compiling a claimant's RFC, the ALJ must consider all relevant evidence in the record. 20 C.F.R. § 416.945(a)(1). An ALJ must consider medical evidence provided by "acceptable medical sources." 20 C.F.R. § 404.1513(a).

Carpenter's contention that the ALJ's RFC conclusion was confusing and not specific is without merit. The ALJ found that Carpenter had the RFC to "perform sedentary *or* light work *as defined in* 20 C.F.R. 404.1567(b)," (AR at 19) (emphasis added) (*i.e.*, lifting twenty pounds occasionally and ten pounds frequently) except he limited Carpenter to *less than a full range* of light work, in that he found she could stand or walk with a cane only two hours per day, and could kneel, bend, crouch, and crawl only occasionally.[2] The *full range* of light work "requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday," (*see* SSR 83-10) so the fact that the ALJ limited Carpenter to sedentary *or less than* a full range of light work is not contradictory.

---

[2]   Carpenter's claim that the Commissioner made a post-hoc finding regarding the amount of weight she could lift is without merit because the ALJ specifically stated the regulation he used (20 C.F.R. 404.1567(b)) to define "light work." (AR at 19.)

7

1  Next, Carpenter contends that the ALJ improperly rejected Dr. Burt's opinion that she
2  was "limited in lifting/carrying and other exertions" when he made the RFC determination.
3  (Mot. at 5.) An ALJ has the duty to reconcile conflicting medical opinions and can reject a
4  treating source opinion that is contradicted by other assessments of a claimant's medical
5  condition, so long as the ALJ provides specific, legitimate reasons for rejecting the opinion.
6  *Batson v. Comm'r of Soc. Sec.,* 359 F.3d 1190, 1195 (9th Cir. 2004). Dr. Burt indicated that
7  Carpenter's knee impairments would restrict her from "heavy lifting, prolonged weight bearing,
8  ... climbing, walking over uneven terrain, squatting, kneeling, crouching, crawling, and
9  pivoting," yet he also noted that Carpenter had full range of motion and good strength in both
10 knees. (AR at 204-05.) Dr. Burt further concluded that Carpenter was restricted to "weight
11 bearing half time" based on her subjective complaints. (*Id.* at 205.) However, Dr. Stein's
12 report indicated that Carpenter's subjective factor of disability was "intermittent slight to
13 moderate" knee pain and found no objective factors for such disability, and Carpenter's medical
14 reports from Ukiah Valley Medical Center and the San Francisco VA describe her knee
15 condition as a "strain" and "not severe." (*Id.* at 126-27, 139, 169.) The ALJ explained that he
16 gave little weight to Dr. Burt's report because of the inconsistency between the report and
17 Carpenter's other evaluations characterizing her knees in terms of a "strain" and "not severe."
18 (*Id.* at 20.) Thus, as required, the ALJ provided "specific, legitimate reasons for rejecting the
19 opinion." *See Batson,* 359 F.3d at 1195.
20 Moreover, an ALJ can ascribe a treating doctor's opinion little weight when the
21 diagnoses are based solely on the claimant's subjective complaints of pain and not on any
22 objective medical findings. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir.
23 1999). Here, the ALJ could properly discount Dr. Burt's diagnoses to the extent they were
24 based on Carpenter's subjective complaints. (AR at 20.) Furthermore, Dr. Stein, as well as
25 doctors at the Ukiah Valley Medical Center, and the San Francisco VA examined Carpenter on
26 more than one occasion, whereas Dr. Burt did not. (*Id.* at 125-169, 197.) More weight will be
27 given to a treating source's opinion the longer that source has treated a claimant. 20 C.F.R. §
28 404.1527(d)(2)(i); SSR 06-03p. Thus, the ALJ properly discounted Dr. Burt's opinion by

8

1 giving more weight to the contrary reports from Dr. Stein, the doctors at the Ukiah Valley
2 Medical Center, and the San Francisco VA.

3 An ALJ can also consider the "circumstances under which [a physician's] report was
4 obtained and its consistency with other records, reports, or findings," in assessing its reliability.
5 *Reddick v. Chater*, 157 F.3d at 726. Here, the ALJ noted that Carpenter's representative
6 arranged the examination by Dr. Burt and he was therefore permitted to consider the reliability
7 of the report to the extent that it was inconsistent with the other medical findings in the record.[3]
8 (AR at 20.) Thus, the ALJ did not err in giving little weight to Dr. Burt's opinion as the ALJ
9 provided specific and legitimate reasons based on substantial evidence in the record to support
10 his conclusions.

11 **E.     The ALJ's Credibility Findings Were Reasonable.**

12 Carpenter argues that the ALJ did not give sufficient reasons for discounting her written
13 statements and testimony regarding her symptoms and limitations. (Mot. at 6-8.) Carpenter
14 indicated that she has knee aches, sits in a recliner most of the day, can only walk twenty feet at
15 a time before needing to rest, and can pay attention for only two minutes. (AR at 104, 279.)
16 The ALJ found that Carpenter's "medically determinable impairments could reasonably be
17 expected to produce the alleged symptoms; however, [her] statements concerning the intensity,
18 persistence and limiting effects" of her symptoms were not credible to the extent they conflicted
19 with the RFC assessment. (*Id.* at 20.) The ALJ made this determination because Carpenter
20 refused to appear at either of the scheduled consultative examinations, directed DDS to look at
21 her medical records instead, and failed to reschedule the examinations despite being warned that
22 failure to do so would likely result in the denial of her claim. (*Id.*)

23 When the ALJ assesses the RFC, "claimant's credibility becomes important."
24 *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001). To make a credibility

---

[3] Carpenter contends that the *Reddick* case held the contrary, quoting the following passage: "We clarify here that, *in the absence of other evidence to undermine the credibility of a medical report,* the purpose for which the report was obtained does not provide a legitimate basis for rejecting it." *Reddick*, 157 F.3d at 726 (emphasis added). However, Carpenter's reliance on this passage is misplaced as here there was, in contrast, other evidence in the record which undermined Dr. Burt's report.

9

1 determination, the ALJ can use "'ordinary techniques of credibility evaluation,' such as
2 considering the claimant's reputation for truthfulness and any inconsistent statements in her
3 testimony." *Id.* at 1148 (citation omitted). The ALJ may reject claimant's testimony, but only
4 if he provides "specific, convincing reasons for rejecting the claimant's subjective statements."
5 *Id.*

6 A claimant's refusal to cooperate with a consultative examination is a valid reason for
7 an ALJ to find the claimant not credible. *Thomas v. Barnhart,* 278 F.3d 947, 959 (9th Cir.
8 2002) ("[claimant's] efforts to impede accurate testing of her limitations supports the ALJ's
9 determinations as to her lack of credibility."). The claimant in *Thomas* "failed to give
10 maximum or consistent effort during two physical capacity evaluations." *Id.* The ALJ in that
11 case thus interpreted the claimant's lack of cooperation "to argue strongly as to her lack of
12 credibility." *Id.* Here, Carpenter failed to attend her two examinations altogether and refused to
13 reschedule, thereby impeding the accurate testing of her limitations even more than the claimant
14 in *Thomas*. The ALJ's conclusion that Carpenter's statements were not credible is therefore
15 valid.

16 Carpenter also claims that she exercised her right to object to scheduling when she
17 missed the examinations. (Mot. at 9.) However, the right to object is not absolute. Rather, the
18 claimant has the right to object to a medical source that has been designated to perform a
19 claimant's consultative examination. 20 C.F.R. § 404.1519j. This objection must be based on
20 good reason and is subject to re-scheduling with another medical source. *Id.* Here, Carpenter
21 did not object to the medical source designated to perform her examination. Rather, she
22 informed DDS that she would not be attending the examinations altogether because the
23 information they needed was already in her record. (AR at 190.) DDS informed Carpenter that
24 the information they had was insufficient and refusal to attend the examinations would be an
25 appropriate basis to deny benefits. (*Id.*) Further, DDS gave Carpenter 10 days to reschedule
26 her examinations, but she failed to do so. (*Id.*) Carpenter was required to have a good reason
27 for missing her appointments and for failing to reschedule. *See* 20 C.F.R. § 404.1518(a) ("if
28 you have any reason why you cannot go for the scheduled appointment, you should tell us about

10

1  this as soon as possible before the examination date. If you have a good reason, we will
2  schedule another examination."). Here, the only reason Carpenter gave was that the
3  information was in her record. This does not qualify as a good reason to miss her examinations.
4  *See* 20 C.F.R. § 404.1518(b) (examples of reasons). Therefore, because the "ALJ's credibility
5  finding is supported by substantial evidence in the record, we may not engage in second-
6  guessing." *Thomas,* 278 F.3d at 959.

### F. The ALJ Properly Considered Lay Witness Testimony.

Carpenter contends that the ALJ failed to give proper weight to a written report submitted by her husband, Michael Carpenter. (Mot. at 10-11; AR at 91.) Mr. Carpenter stated that his wife was in constant pain, had to sit in a recliner all day, could walk only twenty feet at a time, and could pay attention for only two minutes at a time. (AR at 91-98.) The ALJ found that her husband's report "basically corroborates" Carpenter's own testimony regarding her disability and limitations. (AR at 19.)

"Lay testimony as to a claimant's *symptoms* is competent evidence which the Secretary must take into account ... unless he expressly determines to disregard such testimony, in which case he must give reasons that are germane to each witness." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (emphasis in original) (citation and quotations omitted); *see also Stout v. Comm'r of Soc. Sec. Admin.,* 454 F.3d 1050, 1053 (9th Cir. 2006) ("in determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work."). Mr. Carpenter provided observations regarding his wife's symptoms and daily activities, which is competent lay testimony. However, there is no indication that the ALJ did not give proper weight to this testimony. The ALJ noted that Mr. Carpenter's statements corroborated those of his wife's, but went on to provide other reasons for his determination. In his opinion, the ALJ stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence ..." and he also considered opinion evidence. (AR at 19.) As previously discussed, the ALJ determined that Carpenter's reported symptoms were not credible; therefore,

1 the ALJ did not have to give more weight to Mr. Carpenter's statements that simply
2 corroborated those of his wife. Based on the foregoing, the Court finds that the ALJ's
3 credibility findings were reasonable.

**G.  The ALJ's Finding that Carpenter Could Perform Her Past Work as a Medical Secretary or Medical Receptionist was Supported by Substantial Evidence.**

Carpenter argues that the ALJ's findings about her ability to return to her past jobs as a medical secretary or medical receptionist were improper because the ALJ did not account for the short periods of time that she actually performed these jobs. (Mot. at 12-13.) Specifically, Carpenter contends that she did not work the required minimum of three months as a medical receptionist or the required minimum of over one year as a medical secretary for these jobs to constitute past relevant work. (*Id.* at 13-15.)

Past relevant work is work that a claimant has performed within the past fifteen years, that was substantial gainful activity, and that lasted long enough for a claimant to learn to do it. *See* 20 C.F.R. § 404.1560(b)(1). Carpenter worked as a medical receptionist from November 1995 to January 1996. (AR at 76.) The VE testified that Carpenter worked the sufficient period of time to learn the skills of a medical receptionist. (*Id.* at 294.) However, Carpenter argues that she did not learn the necessary skills because the three month-period might not have constituted a full three months of actual work, *i.e.*, that she held the position on "days in three consecutive months, not that she had the job during the full duration of a three month period." (Mot. at 14.) Therefore, Carpenter states that although the VE testified that she had sufficient number of months on the job, "this was based on a *probably* false assumption." (Mot. at 13-15 (emphasis added).) The ALJ's decision must be upheld if the evidence is susceptible to more than one reasonable interpretation. *Reddick*, 157 F.3d at 720-21. Here, the fact that Carpenter worked as a medical receptionist from November 1995 to January 1996 can reasonably be interpreted as constituting three months of work. Thus, the ALJ's finding that Carpenter could perform her past work as medical receptionist was reasonable.

Carpenter also contends that the time period of nine to ten months she worked as a medical secretary does not meet the minimum Specific Vocational Preparation requisite of one

year to be deemed past relevant work to which she could return. (Mot. at 15-16.) As previously noted, Carpenter's paperwork indicates inconsistencies regarding her job titles as a medical receptionist or medical secretary. Regardless of Carpenter's job titles, the evidence in the record indicates that Carpenter's past duties in her job as "operations support/medical assistant" from May 1988 to August 1995 provided her with the requisite substantial gainful activity for her medical secretary position to be regarded as past relevant work. (AR at 76.) This is particularly true in light of Carpenter's testimony at the hearing regarding her job duties. Carpenter told the VE that she answered the phone, pulled files and did billing and purchasing for the office as a medical assistant. (*Id.* at 295-96.) Carpenter also indicated that she worked the front desk and helped the doctor with all reception and office work. (*Id.* at 65.) Carpenter described her medical secretary job as a "personal secretary, office assistant, medical." (*Id.* at 291.) The Court also finds that her duties as a medical secretary were sufficiently similar to her duties as a medical assistant. Therefore, regardless of what Carpenter's job titles may be, there is substantial evidence supporting the ALJ's finding that Carpenter had the requisite substantial gainful activity within the past fifteen years to qualify her prior positions as a medical receptionist and medical secretary as past relevant work. (*Id.* at 65, 76, 295-96.) Thus, the ALJ did not err in finding that Carpenter could return to her prior jobs as a medical secretary or medical receptionist.

## CONCLUSION

For the foregoing reasons, the ALJ properly evaluated the evidence and determined that Carpenter was not disabled. Therefore, Carpenter is not entitled to an award of benefits. Accordingly, the Court DENIES Carpenter's motion for summary judgment and GRANTS Commissioner's cross-motion for summary judgment. A separate judgment shall issue.

**IT IS SO ORDERED.**

Dated: March 10, 2010

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE